**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **P. MICHAEL COLEMAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION 15-0367-WS-M** |
| | ) |
| **UNUM GROUP CORPORATION,** | ) |
| | ) |
| **Defendant.** | ) |

**ORDER**

This matter is before the Court on the plaintiff's motion to reconsider. (Doc. 113). The plaintiff seeks reconsideration of the Court's recent order granting the defendant's motion for partial summary judgment as to the plaintiff's claim for bad faith in cutting off the plaintiff's "own occupation" disability benefits in December 2014. (Doc. 110). The plaintiff asks the Court to vacate that order and to enter a new order denying the defendant's motion. (Doc. 113 at 7).

The grant or denial of a motion to reconsider is left to the discretion of the trial court. *Chapman v. AI Transport*, 229 F.3d 1012, 1023-24 (11th Cir. 2000) (en banc). Such a motion may not be used as a vehicle to inject new arguments into the underlying motion, or to submit evidence previously available but not properly presented on the underlying motion. *Mays v. United States Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997). Nor may it be used to "relitigate old matters." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (internal quotes omitted). Instead, "[a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Gibson v. Mattox*, 511 F. Supp. 2d 1182, 1185 (S.D. Ala. 2007)

(internal quotes omitted).[1]  As this Court has noted, "[m]otions to reconsider serve a valuable but limited function.  They do not exist to permit losing parties to prop up arguments previously made or to inject new ones, nor to provide evidence or authority previously omitted.  They do not, in short, serve to relieve a party of the consequences of its original, limited presentation."  *Dyas v. City of Fairhope*, 2009 WL 5062367 at *3 (S.D. Ala. 2009).  The plaintiff, cognizant of these limitations, asserts that the Court committed a "clear error of law which will result in a substantial injustice" to him.  (Doc. 113 at 1).

The Court, relying on *State Farm Fire and Casualty Co. v. Brechbill*, 144 So. 3d 248 (Ala. 2013), ruled that a plaintiff pursuing either a "normal" or an "abnormal" claim of bad faith (the plaintiff asserted both) must prove that the insurer lacked a debatable reason for denying the claim.  (Doc. 110 at 4).  Relying on *Brechbill* (and on the plaintiff's insistence), the Court further ruled that whether the insurer had such a debatable reason must be measured by the information before the insurer at the time it denied the claim.  (*Id*. at 4, 6).  The debatable reason articulated by the defendant was that the plaintiff was able to perform the duties of his occupation and thus was not disabled under the policy definition.  (*Id*. at 5).  Because the plaintiff maintains he was disabled by symptoms arising from dysautonomia, the Court phrased the issue as whether, based on the information the defendant possessed in December 2014, it was debatable whether those symptoms rendered him unable to perform one or more of the duties of his

---

[1]While *Mays* and *Wilchombe* involved post-judgment motions under Rule 59(e), courts within this Circuit have often applied these principles to pre-judgment motions to reconsider.  *E.g., Busby v. JRHBW Realty, Inc.*, 2009 WL 1181902 at *2 (N.D. Ala. 2009); *Controlled Semiconductor, Inc. v. Control Systemation, Inc.*, 2008 WL 4459085 at *2 (M.D. Fla. 2008); *Eslava v. Gulf Telephone Co.*, 2007 WL 1958863 at *1 (S.D. Ala. 2007);  *Summit Medical Center, Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003). This is only sensible, since allowing parties to withhold arguments and evidence until after losing is equally destructive of judicial economy and fairness in either context.  *E.g., Gibson*, 511 F. Supp. 2d at 1185 (even pre-judgment, "in the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy that is employed sparingly").

occupation. (*Id*. at 9). After reviewing the parties' evidence, the Court concluded that, in December 2014, "it was far from clear that the symptoms [the plaintiff] reported were of such a character, severity, frequency and duration as to render him unable to perform the duties of his occupation." (*Id*. at 14). Because the defendant thus had a debatable reason for terminating benefits, the plaintiff could not establish the third element of his claim, and the defendant thus was entitled to summary judgment as to the bad faith claim, both the normal and abnormal varieties. (*Id*. at 14-15).

The plaintiff asserts a number of legal errors in the Court's analysis. First, he states that the law "recognizes that an insurer's nonpayment, even if facially plausible, may be an artifice, which is the same thing as the absence of an arguable reason." (Doc. 113 at 2). That is, liability for abnormal bad faith will lie when the defendant "offer[s] a plausible-sounding reason for denying a claim that, on its face, seems rational and reasonable [but] is seen to be knowingly based on a flawed investigation." (*Id*. at 3). In this case, the defendant "lacked enough information to terminate [the plaintiff's] claim," and "[u]ncertainty is not a 'debatable' reason for denying benefits." (*Id*. at 6).

Second, the plaintiff argues that the Court erred by "deciding, on the merits, that a 'debatable reason' was shown." (Doc. 113 at 3). By doing so, the plaintiff says, the Court "substitute[d] its own opinion on the merits" and "eliminated the jury's role of deciding the ultimate issue – whether [the defendant] performed a good faith investigation and review to assemble all the evidence in [the plaintiff's] favor and make a rational decision to terminate his claim that was in accordance with all the applicable 'fair claims' standards." (*Id*. at 4).

Third, the plaintiff asserts that the Court "disregarded fact disputes" by "adopt[ing]" the defendant's version and "even supplied its own rationale to support [the defendant's] decision" by "going outside the record." (Doc. 113 at 4, 5). Finally, the plaintiff suggests that the Court improperly focused on the

plaintiff's asserted condition (dysautonomia) rather than on his symptoms.  (*Id*. at 6).

The plaintiff's first argument remains obscure.  To the extent he is suggesting that the existence of a debatable reason is not fatal to a claim of abnormal bad faith, his argument runs counter to *Brechbill*.[2]  The Court has explained why *Brechbill*, as the Alabama Supreme Court's most recent pronouncement, controls over any contrary prior authority, (Doc. 110 at 5), and the plaintiff has not drawn that analysis into question.

To the extent the plaintiff is suggesting that the existence of a debatable reason is fatal to a claim of abnormal bad faith but that the absence of a debatable reason can be inferred from a flawed investigation, he again confronts *Brechbill*.  As the Court noted in its previous order, (Doc. 110 at 4), "Alabama law is clear: … regardless of the imperfections of [the insurer's] investigation, the existence of a debatable reason for denying the claim at the time the claim was denied defeats a bad faith failure to pay the claim."  144 So. 3d at 259 (emphasis and internal quotes omitted).

The plaintiff, (Doc. 113 at 2), points to a post-*Brechbill* decision from the Eleventh Circuit as confirming that "[e]vidence of the defendant's intentional failure to determine whether a lawful basis existed may be used as proof that no such basis, in fact, existed."  *Atlantic Specialty Insurance Co. v. Mr. Charlie*

---

[2] "Regardless of whether the claim is a bad-faith refusal to pay or a bad-faith refusal to investigate, the tort of bad faith requires proof of the third element, absence of legitimate reason for denial …."  144 So. 3d at 258.  "A bad-faith-failure to-investigate claim cannot survive where the trial court has expressly found as a matter of law that the insurer had a reasonably legitimate or arguable reason for refusing to pay the claim at the time the claim was denied."  *Id*. at 260.  "The existence of an insurer's lawful basis for denying a claim is a *sufficient condition* for defeating a claim that relies upon the fifth element of the insurer's intentional or reckless failure to investigate."  *Id*. at 258 (emphasis in original).  Thus, "[b]ecause the trial court's ruling eliminated the third element of bad-faith refusal to pay, [the plaintiff's] claim relying on the fifth element, i.e., that [the insurer] intentionally failed to adequately investigate the claim, must fail."  *Id*. at 258 (internal quotes omitted).

*Adventures, LLC*, 644 Fed. Appx. 922, 926 (11th Cir. 2016).  This argument comes too late to be considered,[3] but it would not alter the Court's ruling in any event.  The *Mr. Charlie* panel relied on a 1984 Alabama Supreme Court decision, and it did not attempt to reconcile this statement with the new precedent of *Brechbill*.  As the Court noted in its previous order, (Doc. 110 at 5), the Eleventh Circuit has signaled that the federal courts should follow the most recent Alabama Supreme Court pronouncement.  *See Mutual Service Casualty Insurance Co v. Henderson*, 368 F.3d 1309, 1315 n.2 (11th Cir. 2004).  That precedent is now represented by *Brechbill*.  "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants."  *Bonilla v. Baker Concrete Construction, Inc*., 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).  For the reasons stated, the Court does not find *Mr. Charlie* persuasive.

The plaintiff complains that *Brechbill* is bad "policy" and that, "if 'bad faith investigation' were not a way to prove the absence of a debatable reason, then it would be superfluous."  (Doc. 113 at 3).  The plaintiff raised no such argument in his opposition brief, but in any event questions of policy and logical consistency are for the Alabama Supreme Court, not this tribunal.

The plaintiff's objection that the defendant "lacked enough information to terminate" benefits assumes that a flawed investigation will support a bad faith claim even though the defendant possesses a debatable reason for its decision.  As discussed above, *Brechbill* is directly contrary and, as the Alabama Supreme Court's most recent pronouncement, it controls.

---

[3] While the plaintiff did cite *Mr. Charlie* in his opposition brief, he offered only a "*see*" signal, with neither an explanatory parenthetical nor even a pinpoint cite.  (Doc. 102 at 27).  And the case the plaintiff quoted before its "*see*" citation was quoted only for the proposition that evidence of the fifth element can be used to infer the fourth element – not the third.  (*Id.*).  The plaintiff's current argument thus was not fairly presented to the Court.  *Cf. Chavez v. Secretary, Florida Department of Corrections*, 647 F.3d 1057, 1-61 (11th Cir. 2011) ("[A]ppellate judges are not like pigs, hunting for truffles buried in briefs ….") (internal quotes omitted).  It therefore cannot form the basis of a successful motion to reconsider.

Nor was the defendant's investigation as flawed as the plaintiff supposes. The defendant initially paid benefits, based on medical restrictions on the plaintiff's ability to stand, sit, bend and lift – restrictions the defendant found incompatible with performance of the plaintiff's frequent travel duties.  Once those medical restrictions were lifted by his neurosurgeon, they could no longer justify payment of benefits.  The plaintiff argues his symptoms of dysautonomia thereafter rendered him unable to perform the duties of his occupation, but the defendant collected medical records from all four doctors the plaintiff identified, which were inconclusive.  The defendant asked each physician to describe what the plaintiff cannot do or should not do; one responded "none," two returned the form without responding, and the fourth did not return the form.  The plaintiff argues the defendant should not have believed the responding doctor and should have demanded the others to give a straight answer, but he cites no authority for the odd proposition that an insurer has a legal duty to disbelieve a physician's assessment, to assume that a doctor's failure to identify restrictions means that restrictions really exist, or to force the insured's health care providers to identify restrictions and to pay its insured so long as they fail to do so.

In *Brechbill*, the defendant did not consider evidence that the insured's residence was undamaged before a windstorm struck it and did not speak to anyone who had knowledge of the house's condition before the windstorm.  144 So. 3d at 259.  Here, the defendant sought information from the plaintiff's health care providers and considered everything they submitted.  The defendant thus did more than did the defendant in *Brechbill*.  Since the flaws in that investigation did not preclude a defense judgment, neither could the asserted flaws in the instant case do so.

Finally, to the extent the plaintiff suggests that "uncertainty is not a debatable reason," he is mistaken.  As the Court previously noted, (Doc. 110 at 6), a debatable reason "means an arguable reason, one that is open to dispute or question."  *Ex parte Simmons*, 791 So. 2d 371, 377 (Ala. 2000) (internal quotes

omitted).  Uncertainty is the warp and woof of a debatable reason, not its antithesis.  *E.g., Morton v. Allstate Insurance Co*., 486 So. 2d 1263, 1271 (Ala. 1986) ("[T]he evidence shows that [the insurer] had a debatable reason for delaying payment of [the] claim, namely, uncertainty as to the amount of [its] liability."); *Tyson v. Safeco Insurance Companies*, 461 So. 2d 1308, 1311-12 (Ala. 1984) (insurer "was faced with a situation of sufficient uncertainty to supply it with a debatable reason to act in the manner it did").

The plaintiff's second argument likewise depends on either writing the third element out of the abnormal case altogether or making that element dependent on the quality of the defendant's investigation.  According to the plaintiff, the "ultimate issue" on which the Court encroached is whether the defendant "performed a good faith investigation and review to assemble all the evidence in [the plaintiff's] favor" and then "ma[d]e a rational decision to terminate his claim that was in accordance with all the applicable 'fair claims' standards."  (Doc. 113 at 4).  Because, under *Brechbill*, that is not the issue, the Court could not have trenched upon it.

To the uncertain extent the plaintiff suggests that a court is forbidden to determine on motion for summary judgment that the defendant possessed a debatable reason for denying coverage, he is again mistaken.  *E.g., McGuire v. State Farm Mutual Automobile Insurance Co.*, 582 So. 2d 1077, 1080 (Ala. 1991); *Aplin v. American Security Insurance Co*., 568 So. 2d 757, 760 (Ala. 1990).  The same holds true for the abnormal form of bad faith.  *Brechbill*, 144 So. 3d at 259 (quoting *Pyun v. Paul Revere Life Insurance Co*., 768 F. Supp. 2d 1157 (N.D. Ala. 2011)).  The uncontroverted facts regarding the information before the defendant in December 2014 established as a matter of law that the defendant possessed a debatable reason for terminating benefits.  That the defendant may not have possessed all the information it could have possessed, or that it may not have weighed the information it did have most favorably to the plaintiff, or that the evidence could have supported a continuation of benefits, is beside the point:

"[W[hen a claim is fairly debatable, the insurer is entitled to debate it …." *National Insurance Association v. Sockwell*, 829 So. 2d 111, 126 (Ala. 2002) (internal quotes omitted).

As to the plaintiff's third objection, the Court neither "adopted" the defendant's version of disputed facts nor "supplied its own rationale" by "going outside the record."  The Court will not dignify this assertion with extended comment, because its earlier order makes the falsity of these assertions transparent.  Pointing out the weakness of the plaintiff's evidence that the defendant saw a July 2014 progress note but concluding that "it does not matter" whether the defendant saw it, (Doc. 110 at 10-11), is not disregarding a factual dispute by resolving it in favor of the defendant – it is noting the immateriality of the dispute.  And pointing out that what prevents an airline pilot from performing her duties may not prevent a CEO/consultant from performing his, (*id*. at 13), is neither going outside the record nor supplying a rationale – it is stating the obvious.

Finally, the Court did not confuse the plaintiff's condition with the symptoms of that condition.  As the Court's order makes clear at multiple points, (Doc. 110 at 9, 11-13) what matters for disability purposes is not the condition but the resulting symptoms, and the Court found the existence of a debatable reason because, from the evidence before the defendant in December 2014, "it was far from clear that the *symptoms* [the plaintiff] reported were of such a character, severity, frequency and duration as to render [the plaintiff] unable to perform the duties of his occupation."  (*Id*. at 14 (emphasis added)).

For the reasons set forth above, the plaintiff's motion to reconsider is **denied**.

DONE and ORDERED this 28th day of September, 2016.


s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE